IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT DAVIS, JR.,
  Petitioner,

vs.          Case No. 4:06cv534/MMP/EMT

WALTER A. McNEIL,[1]
  Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

  This cause is before the court on Petitioner's petition for writ of habeas corpus, filed under 28 U.S.C. § 2254, and memorandum in support thereof (Docs. 1, 2). Respondent filed an answer to the petition with relevant portions of the state court record, and Petitioner filed a reply (Docs. 11, 14).

  The matter is referred to the undersigned magistrate judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.  BACKGROUND AND PROCEDURAL HISTORY

  The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 11, Exhibits). Petitioner was arrested on November 28, 2002, based on allegations of domestic violence (*see* Doc. 11, Ex. A).[2] On December 9, 2002, an Assistant

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereafter all references to exhibits in this Report and Recommendation will refer to the exhibits filed by Respondent with his answer to Petitioner's habeas petition (Doc. 11, Exhibits).

Public Defender ("APD") filed a "Conditional Plea of Not Guilty" on Petitioner's behalf (Ex. B).[3]
On or about December 17, 2002, Petitioner was charged in a three-count information in the Circuit
Court in and for Leon County, Florida, with Aggravated Assault with a Deadly Weapon, False
Imprisonment, and Felony Battery (Ex. C ).

On or about April 1, 2003, an APD filed a Motion for Appointment of Conflict Counsel,
noting that his office could not represent Petitioner because a witness in the case was a client of the
Public Defender's Office (Ex. D).  The motion was granted, and Frank Sheffield was appointed to
represent Petitioner (*id.*).  On April 15, 2003, M. Lilja Dandelake, of Mr. Sheffield's law firm, filed
a written plea of not guilty and demand for jury trial (Ex. E).  On or about August 19, 2003, Mr.
Sheffield filed a motion to continue Petitioner's trial, which was scheduled for a "pre-trial case
management" conference on August 21, noting that Ms. Dandelake had left his law firm and that
he assumed Petitioner's representation on August 1 (*see* Ex. F).  The motion to continue was
granted, although the order continuing Petitioner's trial does not indicate the new trial date (*id.*).

On August 26, 2003, Petitioner filed a pro se "Motion to Discharge Defense Counsel [Mr.
Sheffield] and Appoint Substitute Counsel" (Ex. G).  Petitioner's motion was denied in a written
order dated August 27, 2003 (*id.*).  Next, although not a part of the record, Petitioner sent the trial
court a letter, which the court construed as a "Motion to Re-Set to Earlier Trial Date" and denied
in a written order dated August 28, 2003 (Ex. H).  On September 18, 2003, Petitioner filed a pro se
"Motion to Dismiss" based on speedy trial grounds (Ex. I).  On September 19, 2003, the trial court
entered an order declaring Petitioner's motion a nullity and ordering it "stricken," noting that
Petitioner was represented by counsel and that all pleadings must be filed by Petitioner's counsel
of record (*id.*).

---

[3] The terms of the Conditional Plea note that it is customary for the Public Defender's Office to file a written
plea of not guilty before being furnished with a copy of the charging document, to waive a client's appearance at
arraignment, and to enter pleas of not guilty immediately upon being appointed (Ex. B).

Following a jury trial on November 20, 2003, Petitioner was convicted of assault, a lesser-included offense, on Count One, and felony battery as charged on Count Three (Exs. J, K).[4, 5]  On January 7, 2004, Petitioner was sentenced to "time-served" on Count One and ten years of imprisonment on Count Three as a Habitual Felony Offender, with the first five years to be served as a Prison Releasee Reoffender and with pre-sentencing jail credit of 406 days (Ex. L at 29–30; Ex. M).

On February 3, 2004, a Notice of Appeal was filed on Petitioner's behalf (Ex. N).  Petitioner then, through counsel, filed an initial brief, and the State filed an answer brief (Exs. O, P).  The Florida First District Court of Appeal ("First DCA") affirmed Petitioner's conviction and sentence, per curiam, on February 21, 2005, with the mandate issuing March 9, 2005 (Ex. Q).  Davis v. State, 895 So. 2d 409 (Fla. 1st DCA 2005) (Table).

On October 18, 2005, Petitioner filed in the trial court a Motion for Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 and a memorandum in support thereof (Exs. R, S).  The trial court summarily denied the motion in an order filed February 22, 2006 (Ex. T).  On March 16, 2006, Petitioner appealed the denial to the First DCA (Ex. U).  The First DCA affirmed, per curiam, on June 5, 2006, with the mandate issuing August 2, 2006 (Ex. V).  Davis v. State, 933 So. 2d 524 (Fla. 1st DCA 2006) (Table).  Petitioner filed a Motion for Rehearing, which was denied by order of the First DCA on July 17, 2006 (Ex. W).[6]

Petitioner filed the instant petition on November 20, 2006 (Doc. 1).  Respondent concedes that the petition is timely but asserts that Petitioner is not entitled to relief (Doc. 11 at 5, 8).  Specifically, Respondent contends that the claim raised by Petitioner in Ground One should be

---

[4] Petitioner was not tried on Count Two (*see* Ex. J at 29, 177, 202; Ex. K).

[5] Petitioner was convicted of felony battery, after the jury found him guilty of simple battery and determined in a bifurcated proceeding that Petitioner had previously been convicted of battery (*see* Ex. C; J at 178–95, 202; Ex. K)

[6] Although not relevant to the claims raised in the instant petition, Petitioner also filed in the trial court a Rule 3.800(a) motion raising several illegal sentence claims, which was summarily denied.  On October 1, 2008, the First DCA affirmed the trial court's summary denial of all of Petitioner's claims except for his claim that the trial court improperly sentenced him as a prison releasee reoffender ("PRR") on the felony battery conviction.  *See* Davis v. State, 993 So. 2d 1119 (1st DCA 2008) (holding that trial court may not sentence as a PRR a defendant convicted of felony battery, noting that simple battery is not a "forcible felony" that would support a PRR sentence).

denied because Petitioner failed to exhaust his state court remedies, and the claim raised in Ground Two should be denied on the merits (*id.* at 9–25).  In his reply, Petitioner asserts that he exhausted in the state courts the claim raised in Ground One and that he is entitled to relief on the merits on both Grounds One and Two (*see* Doc. 14).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[7]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[7] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529

U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 496 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 496 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.     EXHAUSTION AND DEFAULT

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[8] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)

---

[8] Section 2254 provides, in pertinent part:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
          (A)  the applicant has exhausted the remedies available in the courts of the State; or
          (B) (i)  there is an absence of available State corrective process; or
               (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." *Id.* (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. *Id.* at 7 & n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan, 513 U.S. at 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[9] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Id. at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32. With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[9] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

416 F.3d at 1302–03 (citations omitted).[10]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); accord Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), rev'd on other grounds, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. Id. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. See Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir.

---

[10] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[11] *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

A petitioner can overcome a procedural default in two narrow circumstances. The petitioner must either show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Henderson v. Haley, 353 F.3d 880, 892 (11th Cir. 2003); Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. Furthermore, the Eleventh Circuit has held that because there is no constitutional right to an attorney in state postconviction proceedings, any ineffectiveness of postconviction counsel cannot be "considered cause for the purposes of excusing . . . procedural default that occur[s] . . . at the state collateral post-conviction level." Henderson, 353 F.3d 892 (citing 28. U.S.C. § 2254(i); Coleman, 501 U.S. at 752; In re Magwood, 113 F.3d 1544, 1551 (11th Cir. 1997); Johnson v. Singletary, 938 F.2d 1166, 1174–75 (11th Cir. 1991)). To establish prejudice, a petitioner must show that there is "at least a reasonable probability that the result of the proceeding would have been different." *Id.*

Alternatively, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the

---

[11] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1301–02 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

requisite probability, the petitioner must show that it is more likely than not that no reasonable juror

would have convicted him." <u>Schlup</u>, 513 U.S. at 327.  Further,

> [A] substantial claim that constitutional error has caused the conviction of an
> innocent person is extremely rare.  To be credible, such a claim requires [a]
> petitioner to support his allegations of constitutional error with new reliable evidence
> -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or
> critical physical evidence -- that was not presented at trial.

*Id.*

IV.    PETITIONER'S CLAIMS

> A.    <u>Ground One</u>: "Petitioner was denied effective assistance of trial counsel as
> <u>guaranteed by the sixth and fourteenth amendments of the United States Constitution, based</u>
> <u>on counsels [sic] failure to investigate a viable defense; to wit: locate Jonathan Young,</u>
> <u>(A.K.A.) Jay Williams, and present this exculpatory witness for trial who could have created</u>
> <u>reasonable doubt as to petitioners [sic] guilt.  This violated [Petitioner's] fifth and fourteenth</u>
> <u>amendment rights as guaranteed by the United States Constitution."</u>

Petitioner contends he received ineffective assistance of counsel because defense counsel

failed to interview, depose, investigate, or otherwise utilize Jonathan Young, a/k/a Jay Williams, as

an exculpatory defense witness (Doc. 1 at 5–8; *see also* Doc. 2 at 1–3).

Respondent contends that Petitioner failed to exhaust this claim in the state courts (Doc. 11

at 9–19).  Specifically, Respondent asserts that although Petitioner raised a nearly identical claim

in his Rule 3.850 motion, the claim is materially different from the claim raised here because

Petitioner alleged in the Rule 3.850 motion that defense counsel was ineffective for failing to

investigate "Jay Williams"; Petitioner, however, did not state that Jay Williams was an alias and that

the true name of the eyewitness was Jonathan Young.

A summary of relevant events underlying this claim provides a helpful context in reviewing

the claim.  On the date of Petitioner's arrest, the arresting officer prepared an offense report and

included therein statements provided by Satarra Riggins, the alleged victim of Petitioner's offenses,

and "Jay Williams," an eyewitness (Ex. A).  In relevant part the officer wrote that Ms. Riggins

reported that Petitioner pushed her into the refrigerator, and she told Petitioner she was going to call

the police (*id.*).  Petitioner then threw the phone away from Ms. Riggins, and when she went to pick

it up Petitioner struck her in her abdomen with his knee (*id.*).  Ms. Riggins attempted to leave, but

Petitioner "brandished a black handled steak knife at her," slapped her head and neck, knocked her

to the ground, and tried to drag her into a bedroom while she fought to escape (*id.*). The officer reported that Mr. Williams also provided a statement and that his statement was consistent with the statement provided by Ms. Riggins, except Mr. Williams did not mention that Petitioner had a knife (*id.*).[12]

Prior to the commencement of Petitioner's trial, and outside the presence of the jury, the trial judge heard arguments from the parties regarding the admissibility of similar fact evidence (*see* Ex. J at 5–10). During this discussion, the judge commented that, "apparently, there was a witness, Jay Williams," to which the prosecutor responded, "Correct, Your Honor." (*id.* at 8). And, following this discussion, Petitioner's trial counsel stated the following to the judge:

> There is a witness that is listed by the State, Mr. Jay Williams. And in all sincerity from our standpoint and the State's standpoint, I know they searched diligently to try to find Jay Williams, and I have reason to believe that Jay Williams may either be incarcerated or running from the law himself.
>
> Toward that end, Judge, just for record purposes, I probably would be, in an abundance of caution, remiss if I did not move for a continuance at this point for the purpose of trying to get Jay Williams in as a witness. Because, clearly, within the police report, he testifies that he was able to observe all of the events that took place that night, and he never saw a knife. He told the police officers that night.

(*id.* at 13). The judge then noted that Mr. Williams's name was listed on the offense report and asked whether defense counsel had subpoenaed him for trial (*id.* at 14). Defense counsel responded by stating that he could not find him, just as the State could not find him (*id.*). Defense counsel was again asked whether he had subpoenaed Mr. Williams, and in response he stated that "without giving out attorney/client privileged information, I have a good faith reason to believe that there is no way we are going to ever be able to find him until he is locked up" (*id.*). The judge also asked whether Mr. Williams was deposed prior to trial, and defense counsel stated that "nobody showed up for the depositions," and Ms. Riggins's deposition was not taken until "yesterday" (that is, the day before Petitioner's trial) (*id.* at 16). Defense counsel also stated that he "grew up knowing Mr. Williams" and that they played football together, and that is why he (defense counsel) knew he would not be

---

[12] The offense report includes Mr. Williams's phone number, date of birth, and race but does not include an address (*see* Ex. A).

able to find Mr. Williams (*id.* at 16–17).[13]  Defense counsel's motion to continue Petitioner's trial was denied (*id.* at 16).

Defense counsel next asked the judge if he could question the officer regarding Mr. Williams's statement (that is, Mr. Williams's statement that he did not see a knife during the incident between Petitioner and Ms. Riggins), but the judge noted that the statement would be hearsay and would not be allowed "unless you [defense counsel] have some other exception to the hearsay rule . . . other than maybe excited utterance or spontaneous statement, which it doesn't sound like it is going to be spontaneous" (*id.* at 14–15).

Additionally, relevant to the instant claim, an investigating officer testified during Petitioner's trial that there was a witness named Jay Williams, who was inside the apartment at the time of the alleged offenses, but he "took off" while the officer was at the scene investigating, and "we've been unable to locate" him since (*see id.* at 97–98).

In Petitioner's Rule 3.850 motion, he styled Claim Three as follows:

> [Petitioner] was denied effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, based on counsel's failure to adequately investigate and present available eye witness for trial that would have created reasonable doubt as to [Petitioner's] guilt, this violated defendant's Fifth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

(Ex. R at 14).  In support of Claim Three, Petitioner specifically alleged that Jay Williams was an eyewitness who would have testified that Petitioner did not threaten the victim with or brandish a knife, the victim initiated the altercation, and Petitioner "was only trying to keep the victim off of him" (*id.*).  Petitioner further alleged that if counsel had "done even the slightest bit of investigation counsel would have learned that Jay Williams was incarcerated at Putnam C.I.," and because he was incarcerated at Putnam C.I., "Jay Williams would have had to have been confined in a county jail somewhere in Florida, and the task of locating Jay Williams should have been simple for counsel"

---

[13] The court and the parties also discussed that someone named Jay Williams, who was about six feet and seven inches tall, had been "brought in" by the State, but it was not the same Jay Williams who was an eyewitness in Petitioner's case (Ex. J at 16–17).  Defense counsel noted that the eyewitness Jay Williams, which was the same Jay Williams he knew growing up, was only about six feet and one inch tall (*id.*).

(*id.* at 15). Petitioner also noted that he (Petitioner) "only became aware of Jay Williams [sic] whereabouts after trial" (*id.*).[14]

In the written order denying Petitioner's claim that defense counsel "was ineffective for failure to investigate, attempt to locate, and depose alleged eye witness Jay Williams, and for failure to call Mr. Williams as a witness at trial," the trial court found that Petitioner's claim was "conclusively refuted by the record, which shows that, after diligent search, neither defense counsel nor the State could locate this witness" (Ex. T at 3).

As noted *supra*, Petitioner appealed the trial court's denial of his Rule 3.850 motion (*see* Ex. U). Petitioner appealed the denial by filing a notice of appeal only; he did not submit a brief.[15] Following the First DCA's per curiam affirmance, Petitioner filed a Motion for Rehearing, and in this motion for the first time Petitioner mentioned that Jay Williams was an alias for the true name of the eyewitness (Ex. W). Specifically, Petitioner alleged that "Jay William [sic] (AKA)" was an eyewitness," he was incarcerated at Putnam C.I., and counsel failed to depose "this witness who could have exonerated [Petitioner]" (*id.* at 2). Petitioner further stated as follows: "{NOTE} [Petitioner] failed to clarify that Jay Williams was an alias, as counsel and Judge knew, and that witnesses [sic] real name was Jonathan Young." (*id.*).

In the instant petition Petitioner generally asserts the same arguments as he did in the Rule 3.850 motion, but here—-as Petitioner did in the motion for rehearing filed in the First DCA— Petitioner asserts that Jay Williams is also known as Jonathan Young and that he "requested counsel to interview and take a deposition of Jonathan Young, (A.K.A.) Jay Williams, for use as a defense witness," but counsel failed to do so (Doc. 1 at 6). Petitioner further states that if defense "counsel had done the slightest search for Jonathan Young, (A.K.A.) Jay Williams, counsel would have learned that this potential witness was incarcerated at Putnam C.I. at the time of trial" (*id.*).

---

[14] In the memorandum in support of Petitioner's Rule 3.850 motion he provided legal authority in support of Claim Three, but he did not mention Jay Williams by name and did not give any indication that the witness counsel failed to investigate used an alias (*see* Ex. S at 7–10).

[15] Pursuant to Rule 9.141 (b)(2)(C) of the Florida Rules of Appellate Procedure, briefs are not required on appeal from summary denial of a Rule 3.850 motion without an evidentiary hearing.

The undersigned concludes that Petitioner only partially exhausted the instant claim in the state courts. It is clear that in denying Petitioner's Rule 3.850 motion, the trial court considered only the claim that counsel was ineffective for failing to locate or investigate "Jay Williams." The court did not consider whether counsel was ineffective for failing to locate Jonathan Young, who used the alias Jay Williams, an issue Petitioner admittedly raised for the first time in his motion for rehearing filed in the First DCA. *See* Massey v. State, 760 So. 2d 956 (Fla. 3d DCA 2000) (as a general rule "appellate courts will not consider arguments raised, as this one admittedly was, for the first time on rehearing"); Fla. R. App. P. 9.330(a) ("A motion for rehearing shall . . . not present issues not previously raised in the proceeding."). Thus, Petitioner's inclusion of new facts in the instant claim fundamentally alters the claim raised in the Rule 3.850 motion and renders the claim, if considered as a whole, unexhausted. *Cf.* Anderson v. Johnson, 338 F.3d 382, 386–87 (5th Cir. 2003) ("Although exhaustion inquiries are fact-specific, as a general rule 'dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts.'") (footnote and citations omitted). Rather than dismiss the claim, the court will separate the claims, analyzing the exhausted part of the claim under the AEDPA and the unexhausted part de novo. *See* 28 U.S.C. § 2254(b)(2) (section 2254 petition may be denied on the merits notwithstanding the petitioner's failure to exhaust state court remedies).

        1.        Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2. Federal Review of State Court Decision

(a) Jay Williams

Petitioner raised this claim—as to Jay Williams—in his Rule 3.850 motion (Ex. S at 7–10). In the state court's written opinion denying Petitioner's motion, the state court identified Strickland as setting forth the controlling legal standard for analyzing claims of ineffective assistance of counsel (Ex. T at 1–2). In denying relief on this claim, the state court noted that defense counsel cannot be ineffective for failing to locate Mr. Williams because the record conclusively "shows that, after diligent search, neither defense counsel nor the State could locate this witness" (*id.* at 3).

Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

Initially, Petitioner has failed to present clear and convincing evidence to rebut the state court's factual findings regarding the parties' inability to locate Mr. Williams; therefore, those findings are presumed correct.[16] Moreover, the record supports the trial court's findings, as the trial transcript reflects in pertinent part that: (1) the State tried but could not locate Mr. Williams (and went so far as to "bring in" the wrong Jay Williams); (2) Mr. Williams "took off" during the officer's investigation (suggesting a deliberate effort by Mr. Williams to avoid any further involvement in Petitioner's case) and could not be located by law enforcement since that time; and (3) defense counsel—who had grown up with and personally knew Mr. Williams—had not located him and believed (apparently based on privileged communications with Petitioner) that there was "no way" he could be found "until he [was] locked up" (Ex. J at 14). Thus, the trial court's finding was based upon a reasonable determination of the facts in light of the evidence in the record. And, in light of the trial court's finding that Mr. Williams could not be located, Petitioner has failed to demonstrate that defense counsel's failure to locate, interview, or subpoena Mr. Williams constituted

---

[16] To the extent Petitioner contends Mr. Williams could have been located by searching for "Jonathan Young," Petitioner's contention is addressed, *infra*, in section IV.A.2(b).

deficient performance. Accordingly, the state court decision denying Petitioner's claim was not an unreasonable application of <u>Strickland</u>.[17]

(b)    <u>Jonathan Young a/k/a Jay Williams</u>

Because Petitioner did not allege ineffective assistance of counsel based on counsel's failure to locate Jonathan Young, a/k/a Jay Williams, the state court did not address this precise claim. However, upon de novo review, the undersigned concludes that the claim is without merit.

Initially, Petitioner has offered no facts to support his assertion that Jay Williams was indeed also known as Jonathan Young, or similarly, that a person was incarcerated under the name of Jonathan Young at the time of Petitioner's trial and that the incarcerated person was the same person who was an eyewitness in Petitioner's case. Therefore, Petitioner has failed to demonstrate that counsel's failure to attempt to locate the eyewitness by searching for Jonathan Young was unreasonable.

Furthermore, even if Petitioner had established that the eyewitness's true name was Jonathan Young, that Mr. Young used the alias Jay Williams, that Petitioner informed his trial counsel of the eyewitness's true name, and that counsel could have located the eyewitness using his true name but failed to do so, Petitioner cannot demonstrate that he was prejudiced by counsel's failure to present Mr. Young's testimony. The offense report reflects that the eyewitness provided a statement that was consistent with the statement provided by Ms. Riggins, except the eyewitness made no mention of Petitioner's use of a knife. Petitioner, however, was not convicted of any crime involving the use of a knife. Although Petitioner was charged in Count One with assault with a knife (*see* Ex. C), he was convicted of the lesser offense of simple assault which, as the jury was instructed, is an offense committed without the use of a knife or deadly weapon (*see* Ex. J at 132–33). Likewise, the offense alleged in Count Three, simple battery, is an offense committed without the use of a knife or deadly weapon (*id.*).[18] Thus, the testimony of the eyewitness would not have changed the result of Petitioner's trial because the statement provided by the eyewitness is entirely consistent with the

---

[17] The trial court did not address, and did not need to address, the prejudice prong of <u>Strickland</u>. *See* <u>Turner</u>, 339 F.3d at 1279.

[18] The battery conviction constituted a felony only because, as alleged in the information and as the jury found, Petitioner had a prior conviction for battery (*see* Exs. C, K).

jury's verdicts finding Petitioner guilty of simple assault and battery. Petitioner, therefore, was not prejudiced by counsel's failure to locate and subpoena the eyewitness.[19]

Accordingly, Petitioner is not entitled to relief on the claim raised in Ground One of the instant petition.

B.    Ground Two:  "Petitioner was denied effective assistance of trial counsel as guaranteed by the sixth and fourteenth amendments of the United States Constitution, based on counsel's failure to timely assert petitioners [sic] speedy trial rights.  This violated petitioners [sic] fifth, sixth and fourteenth amendment rights as guaranteed by the United States constitution."

Petitioner contends trial counsel was ineffective for failing to assert Petitioner's speedy trial rights, that Petitioner "is entitled to [] the benefits of the state created procedural due process afforded in [Fla. R. Crim. P.] 3.191," and "but for counsel's error in not timely asserting petitioners [sic] speedy trial rights there is a strong probability that the charges would have been dropped and petitioner discharged" (Doc. 1 at 10–11).  Respondent concedes that Petitioner exhausted this claim in the state courts by presenting it as Claim One in the Rule 3.850 motion and appealing the denial therefrom (*see* Doc. 11 at 19–20).

1.    Clearly Established Supreme Court Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel was set forth *supra*.

2.    Federal Review of State Court Decision

As previously noted, the state court identified <u>Strickland</u> as setting forth the controlling legal standard for analyzing ineffective assistance of counsel claims (Ex. T at 1–2).  In the written order denying Petitioner's claim the state court found that Petitioner failed to allege "any prejudice that would relate to the merits of the case or fairness of the trial," and further, that Petitioner's "vague and conclusory allegation that he would have been discharged from prosecution had counsel invoked and exercised [Petitioner's] right to a speedy trial is unsupported" (*id.* at 2).  Additionally, the state

---

[19] Petitioner's claim in the Rule 3.850 motion and in the instant petition that the eyewitness would have testified that the victim initiated the altercation and that Petitioner "was only trying to keep the victim off of him" (Ex. R at 14; Doc. 1 at 6) is devoid of any factual support and contradicted by the statement of the eyewitness as contained in the offense report (*see* Ex. A).

court found that Petitioner failed "to allege specific facts supporting the allegation that had his trial taken place earlier, the outcome of that trial would have different" (*id.*).

A review of Petitioner's Rule 3.850 motion reveals, as the trial court found, that Petitioner did not allege any facts establishing that the result of his trial would have been different had his trial commenced earlier. Similarly, Petitioner alleged no facts in support of his conclusory allegation that he would have been discharged from prosecution had counsel asserted Petitioner's speedy trial rights under Rule 3.191 of the Florida Rules of Criminal Procedure.

Rule 3.191 provides, in relevant part, as follows:

> **(a) Speedy Trial without Demand.** Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) [governing prisoners outside the jurisdiction of Florida] and (f) [governing consolidation of a felony and misdemeanor], every person charged with a crime by indictment or information shall be brought to trial within 90 days if the crime charged is a misdemeanor, or within 175 days if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p) [which includes, in some circumstances, discharge from the crime]. The time periods established by this subdivision shall commence when the person is taken into custody as defined under subdivision (d).

Subdivision (d) of the rule provides that a person is taken into custody when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged. Fla. R. Crim. P. 3.191(d). The remedy for the State's failure to bring a defendant to trial within the requisite time period is that the defendant may file a "Notice of Expiration of Speedy Trial Time," and within five days a hearing must be held. Fla. R. Crim. P. 3.191(h), (p)(2). At the hearing, the trial court must determine whether one of the reasons for an extension of time exists, as enumerated in the rule. Fla. R. Crim. P. 3.191 (j), (p)(1). Upon a finding that none of the reasons exist, the defendant must be brought to trial within ten days of the date of the trial court's order finding that a violation of the rule occurred and that no reason exists for an extension. Fla. R. Crim. P. 3.191(p)(3). This is known as the ten-day "recapture" period. If trial does not commence within the "recapture" period, the defendant may file a motion for discharge which, if granted, forever discharges the defendant from the crime. Fla. R. Crim. P. 3.191(p)(3), (j), (n).

Here, the record shows that Petitioner was arrested on November 28, 2002,[20] and on April 1, 2003, the Office of the Public Defender filed a motion to withdraw from Petitioner's representation (Exs. A, D). The motion was granted on April 1, 2003, and conflict counsel was appointed to represent Petitioner (Ex. D). On April 15, 2003, conflict counsel filed a written plea of not guilty and demand for jury trial (Ex. E). Although the record does not reflect if or when Petitioner's trial was set (following conflict counsel's filing of the written plea of not guilty and demand for jury trial), in a motion for continuance filed on August 19, 2003, Mr. Sheffield indicated that Petitioner's case was scheduled for a "pre-trial case management" conference on August 21, 2003 (Ex. F). Thus, viewing the record in the light most favorable to Petitioner, it appears that the 175-day period had expired prior to the filing of the motion to continue by Mr. Sheffield.

Notwithstanding, Petitioner has failed to demonstrate a reasonable probability that the outcome of the proceedings would have been different if counsel had sought discharge on speedy trial grounds. Pursuant to the procedural rule, the remedy for a speedy trial violation is not immediate discharge from the crime; rather, as noted above, when the speedy trial time has expired and a defendant has filed a notice of its expiration, the court must hold a hearing within five days of the filing of the notice. And, unless a reason set forth in Rule 3.191(j) exists, the court shall order that the defendant be brought to trial in ten days.

First, Petitioner has not demonstrated a reasonable probability that the trial court would have ordered that his trial commence within ten days of a hearing held pursuant to Rule 3.191(p).[21] Second, even if the trial court found that no reason for an extension of time existed, as set forth in subdivision (j), and ordered that Petitioner's trial commence within ten days of a hearing held

---

[20] One-hundred seventy-five (175) days from November 28, 2002, is May 22, 2003.

[21] As noted *supra*, within five days of the filing of a "Notice of Expiration of Speedy Trial Time," the court must hold a hearing on the notice and "unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days." Fla. R. Crim. P. 3.191 (emphasis added). Included within subdivision (j) is the following reason: "the failure to hold trial is attributable to the accused, a codefendant in the same trial, or their counsel." Fla. R. Crim. P. 3.191(j)(2) (emphasis added). Here, the record reflects that Petitioner's original counsel, an APD, filed a motion to withdraw from representing Petitioner four months after Petitioner's arrest and less than two months before the expiration of the 175-day speedy trial period. Under these circumstances the court could have reasonably concluded that the delay was attributable to Petitioner's counsel. *See* Hill v. State, 467 So. 2d 695 (Fla. 1985) ("failure to hold trial within the speedy trial period must be attributed to defense counsel's eleventh hour withdrawal and the resulting continuance necessitated by it").

pursuant to subsection (p), Petitioner has failed to demonstrate a reasonable probability that the State would have failed to bring him to trial within the requisite ten-day "recapture" period.

Thus, even if Petitioner had established that his counsel performed deficiently in failing to file a Notice of Expiration of Speedy Trial Time or otherwise seek discharge on speedy trial grounds, he has failed to demonstrate he suffered Strickland prejudice as a result of counsel's alleged error, as the state court found. Accordingly, the state court decision denying Petitioner's claim was not an unreasonable application of Strickland.

V.     CONCLUSION

Petitioner has failed to establish any meritorious claim for relief. Therefore, his habeas petition should be denied.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 6th day of November 2009.


                            */s/ Elizabeth M. Timothy*
                            **ELIZABETH M.  TIMOTHY**
                            **UNITED STATES MAGISTRATE JUDGE**


                    **NOTICE TO THE PARTIES**

          **Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**